Good morning, Sherry White on behalf of the defendant appellant, Officer Thomas Burkott, and I would like to reserve three minutes for rebuttal. I'm not going to belabor the facts here. Officer Burkott, who is the only individual defendant in the case, was asked to assist the fugitive apprehension team in executing an arrest warrant. Plaintiff's arguments boil down to two things. They argue that he protested his innocence to Officers Burkott, and secondly, that Officers Burkott had access to these photographs and should have compared them, but there is no record evidence to that effect. What's in the record is Officers Burkott's affidavit, in which he says he was on duty on that date, which was January 18, 2012. He was assigned to assist in executing this arrest warrant. No, no, I'm not asking you for the content of the Officer's affidavit. I'm asking you what items are in the record at this point. Essentially as to what Officers Burkott did and his involvement. That's not what I'm asking you. I'm asking you what items are in the record, not which ones your client submitted. That's not a hard question. There's the video arraignment transcript, which there was no mention. Is there anything, an affidavit or a deposition, or anything of that type for Mr. Seals? No, there's no deposition in the record. Is there an affidavit? From Mr. Seals? Yeah. No. Is there an admission by an officer that he asserted he was not the right person? No. Okay. There's the transcript of the arraignment, I mean, I'm sorry, the preliminary examination at which the issue was arisen, the issue arose and the prosecutor dismissed the charges. Because this other individual had used Mr. Seals' name. That's noted at the preliminary exam. Okay. So our contention here is that Officers Burkott is entitled to qualified immunity. There was nothing to inform him that he should have done anything other than what he did. And with regard to the state law claim of gross negligence, under Michigan law, there is no evidence that his conduct was reckless so as to demonstrate a substantial lack of concern for whether an injury results. And the intentional tort claims of false arrest and false imprisonment, there was a recent Michigan case, Rowe v. Ainslie, there's no malicious intent shown here so that count should be dismissed as well. Officers Burkott's affidavit establishes his involvement in the matter. And unless there are any other questions? Let me ask you this, and I don't see this in the record so you could tell me if it's not, the decision to execute the warrant at the location where Mr. Seals was located, it did, is there anything in the record indicating that Officer Burkott had anything to do with selecting that location to execute the arrest warrant where Mr. Seals was placed under arrest? Absolutely not, Your Honor. That information was developed and Officers Burkott was merely asked to assist Officer Faith from, or Corporal Faith from Dearborn needed another officer for the task force. The, Mr. Seals was incarcerated for 14 days, correct? Yes, the 14th day, he was released February the 1st. What is your argument regarding the state of the law as to whether the 14 days of incarceration constituted a clearly established violation of Mr. Seals' constitutional rights? We don't believe that under the circumstances of this case it would have been clearly established that the 14 days was a constitutional violation because the issue of Mr. Seals not being the person named in the warrant, according to the record, didn't come up until the, or just prior to the preliminary examination, which was on February 1st. And the prosecutor, I believe, had spoken with the witness who indicated that this was not the individual and it's right in the preliminary exam transcript the case was dismissed and he was released that day. So under that circumstance, no, we do not believe that under the law at that time, that under those circumstances was it violation of a clearly established right. Okay, but you're not disputing that when Mr. Seals was arrested, he told the officer that he had the wrong person. You don't dispute that? On the record of this motion, there's no evidence that he protested his innocence to anyone really, but particularly as to Officers Burkott, there isn't any. But I would say I don't think there's any evidence that he, in this record, that he protested his innocence to anybody. Your contention is that he never claimed that he was not the person being sought or that that didn't come up until the time of the preliminary examination. Is that your position? Well, so far as we know from the record, but clearly there's nothing indicating that Officers Burkott was made aware of that claim in any way. Do you have any argumentation or citations of authority regarding whether an incarceration of 14 days that was improper could constitute a constitutional violation or not in terms of the length of the incarceration? I would say that the cases talk about various lengths of time. Do you have any case citations you want to offer or not? Nothing directly on point. Well, in terms of the time, again, you have to look at all the surveys. You don't have any cases you want to mention at the present time? None that haven't already. All right. Okay. That's fine. Been mentioned. Thank you, Your Honor. Okay. Thank you. Good morning, Your Honor. May it please the Court, James Craig on behalf of the appellee. I would like to highlight the important points as to why the District Court's ruling should be affirmed. And I would like to also mention that I believe our argument is somewhat misrepresented. I don't believe it turns on whether or not Mr. Seals protested his innocence. The first important distinction here— Well, that would be highly relevant to particularly the claim with respect to his continued confinement. So, I mean, if it doesn't turn on that, that's pretty important. As to the continued detainment and malicious prosecution, I agree. But I believe that the constitutional violation started well before that. Well, let's—I mean, the way I look at this is I think you can compartmentalize pretty easily, and in fact you must compartmentalize to analyze the record correctly, into the basis for the initial arrest and the claim for continued confinement. And it's very important to the claim of continued confinement whether the officers knew or had reason to know that Mr. Seals claimed that he was innocent. And if Ms. White is correct, that there's no evidence of that in the record, it would strike me that you might have something of a problem here. Well, the district court found that there was evidence that he did protest. Well, I mean, the district court's finding doesn't make it so. So perhaps you could tell us where, if anywhere, that evidence is in the record. And saying it in your brief does not make it in the record. Saying it in your complaint does not make it in the record. Evidence is something like an affidavit, a deposition, those kinds of things that form the evidentiary basis for the summary judgment motion. I believe it was contained in the transcript from the preliminary exam. I think that it was contained in there, Your Honor. But that was after the fact, wasn't it? Pardon me, but they talked about what he— Wasn't that the occasion on which he was released? Correct. Well, the whole basis for the continued confinement claim would be that he protested his innocence from the get-go. An officer—I don't know how to pronounce his name—the officer having possession of the fingerprints of the person they were looking for, having a description, it seems like there were one or two other things, would have had a duty to check this out further rather than continue to allow him to languish in the jail. Correct. So you don't think there's any evidence in the record either that he told them that prior to that occasion? Other than what I mentioned, I don't believe there is. The day he was released, that's the only evidence you can— The day that he was released, there's a transcript about how he indicates, I believe, that he told them that he was not the right— So he says in that transcript that he told them. I can't remember exactly what was said, but I believe that they talked about how he said that he was not the right person, he was not Mr. Roderick Siner. Well, did he tell the judicial officer that day that he was not the right person, or did he detail his history of having said that since the get-go? He did testify, Mr. Seals did testify that he told him that day that he was not the right person. What day? The day that he was arrested and told the officer, Mr. Seals. And so if that's there, that would be evidence. Right. But as I said before— Wait, I'm not sure I understand that. Are you saying that your client testified at the preliminary examination that he told the officer on the day of the arrest that he was not the right person? Is that what you're saying? I don't believe that he said that. Did your client even testify at the preliminary exam? He did. He did. I thought the way they discovered that he was not the right person is that the victim at the preliminary exam indicated that this was not the perpetrator. And that's how all this came to light. Is that right? That's correct. That's correct. So it sounds like it's possible and perhaps probable that nobody knew he was the wrong person until the preliminary examination. Is that right? Well, there was the case against the Wayne County that was dismissed because of that very point, that there was nothing while he was incarcerated where he was telling people he was the wrong person. But Officer Zurbichau was not involved in that process. He was involved in the arrest of Mr. Seals. And so Nat, you originally told us that your client testified at the preliminary examination that he told officers at the time he was arrested that he was not the right person. And now I understand you to have told Judge Clay that that's not so. I said he testified in his deposition but that did not become part of the record. In Mr. Seals' deposition he said that. Why in the world wouldn't you have made it part of the record? I was not involved and I don't know why that didn't become part of the record, Your Honor. That's the whole foundation for that claim. I agree. But in this case, I think it goes well beyond that because here they had a warrant for somebody other than Mr. Seals. So from the very beginning there was no probable cause to arrest him. Well, the person who was actually the person being sought was using an alias that was virtually identical to your client's name. And apparently the geography made sense too. That this place of work was within where the actual criminal operated. Right, but what I'm saying is that the case law is that a facially valid warrant for one person does not give probable cause to arrest a different person. Well, that's what we'll have to grapple with. This circuit has not yet reached that, but the Fifth Circuit has in a case called Brown v. Byer, 870 F. 2nd 975. The Fifth Circuit said that the existence of a facially valid warrant for the arrest of one person does not authorize a police officer to affect the arrest of another person. In Berg v. County of Allegheny, the Third Circuit said the same thing. This is 219 F. 3rd 261 2000. The Court of Appeals for the Third Circuit held that a facially valid warrant for one person does not give probable cause to go and arrest another person. So from the beginning there was no probable cause to arrest Marvin Seals. The District Court, page 9 footnote 4, correctly found that the defendant had not provided any evidence of probable cause to assume that Mr. Seals was the person sought in the warrant. So other than their argument that there was a facially valid warrant for someone else, there was no probable cause to begin with to arrest Mr. Seals. So he clearly had an established right to be free from arrest without probable cause. Well, in fact, in fact, I mean, when you get to analyzing the qualified immunity issue with respect to the arrest, whether he was actually the person doesn't seem to be the operative fact. It probably turns on the reasonableness of the officer's belief. And that's what I was going to go into next. Based on his reliance on an apparently valid warrant, you look at whether the arrest was reasonable. Here, Officer Zurbichat didn't do anything to see that the person he was arresting matched the person named in the warrant. Well, if there's no evidence in the record that the defendant, that Mr. Seals protested, I mean, how is the officer supposed to be on any kind of notice that he hasn't arrested the right person? By checking the birth date, by checking, by seeing that the names don't match, the birth date doesn't match. Officer Zurbichat had signer's birth date. He entered it into the system. That was part of the record. And he had a different birth date for Seals. He did not check his identification. He did not check. That would probably go, again, to the length of time of confinement. It probably would not go to the initial arrest. Because you don't necessarily, you don't, when officers have to make an arrest, the reasonable thing for them is to get it done and to get the person whom they believe they are rightfully arresting quickly into custody so that there aren't any incidents that could pose harm to anybody. I mean, perhaps if the officer did that, had done that at a later time, but then again, you very quickly get into questions of whose duty it is to do that and at what point. Well, I don't believe any reasonable officer could have believed that not attempting to even identify the person you're arresting would be lawful. I mean, I don't see how that could ever be so. It sounds to me like the mistake may have been made earlier because they knew where Mr. Seals worked. They went right there. They found him. I mean, and so they got there because they thought they'd researched the Mr. Seals they were looking for and why he was located, where he was located. Well, as the district court appropriately found, there was no evidence that the defendant Zerbakot acted reasonably. He didn't do anything to see that the person he was arresting met. Had he simply checked the driver's license, the address, the birth dates were different, he did none of that. And in this court, even in Gray v. Seahoga County Sheriff's Department said that you have to use a degree of a reasonable officer in that position with what you have at your disposal at the time. Here, there was nothing, nothing that Officer Zerbakot did other than arrest him. It would be the same thing of bringing the warrant for Mr. Roderick Siner and arresting one of you or one of me without attempting to identify us, check the birth date, see if it matched, check the license, see if the address is matched. There was nothing done. And therefore, there was no reasonableness at all and he's not entitled to qualified immunity on that basis. Do you have any, what do you have in the way of authority that this, that 14 days of incarceration would be a violation of clearly established law under these circumstances? On page 9 of our brief, we know 41 days is, we know 30 days is, we know 3 days from a prior case is not. I think that was Baker. I believe that 14 days would qualify but I do not have a case on point, Your Honor. We have the range there. I do have a range. With those cases together, we have a range. We do. All right. Anything further? And just as to the last point, the gross negligence claim, the district court found that reasonable jurors could find that Zurbakot's conduct amounted to gross negligence based on his failure to verify that he had the right person, the failure to identify Mr. Seals. And with the non-matching info, and we believe that that also should be affirmed. Okay. On the state law claim, there's something, I'm just wondering if you appropriately preserve that claim in your argument before the district court. Could you, what would you say to the contention that maybe that claim is waived? The gross negligence claim or the false? The state law claim for false arrest, false imprisonment. Well, it was preserved because the district court said that they didn't properly raise it and they didn't claim that they were immune from those two claims. So the district court didn't reach that. So that should not be disturbed on appeal. The district court mentioned that that was not raised by the defense, so that should not be disturbed. All right. Thank you. Any more about them? That's just a few very quick points. Judge Gibbons and Judge Clay, I think you're exactly right as far as what the record shows about any claim of innocence. At the February 1st, 2012 preliminary examination, the prosecutor says, Your Honor, we have an issue regarding the identification. Mr. Orlando Ferris, who is the victim in this case, has indicated to me this morning that this is not the Roderick Siner that fired shots at him back on April 13th, 2010. Apparently, the defendant used this young man's name and based on that, we have insufficient evidence to go forward this morning. The victim told the prosecutor that that morning and that's in the record. So the counsel's argument here today, or in his brief also, is that the negligence or the lack of care on the day of the arrest. So address that, if you would, please. That failure to verify anything. That the alias didn't match this gentleman. Officers Burkott had no reason to believe that this was anyone other than the person. The information had already been developed. He was merely assisting in the execution of the warrant. And there's no evidence that he had any access to the photos. The photos are undated. They don't indicate anything about whether Officers Burkott knew anything about them or whether they existed or anything like that. So we believe that his conduct at the moment of arrest was reasonable. Qualified immunity, we know, protects all but the plainly incompetent. The argument here is that was plainly incompetent to not check a license or a birth date or something like that. Under the circumstances, I wouldn't concede that that's plainly incompetent. But qualified immunity applies nonetheless. Well, I note that despite your opposing counsel's representation, the deposition of Mr. Seals is in the record on the summary judgment motion. Do you disagree with respect to whether it contains the assertion that Mr. Seals told officers at the time they arrested him that he was not the right person? If I remember the deposition correctly, I don't think there was any specific claim that he said that he told officers of Burkott that he wasn't the person. I have the transcript here if you'd like to see it. I'm looking at the transcript. I haven't gotten through it, which is why I don't know the answer to the question. Well, we have it, and we can read it. Well, I see that you're out of time there. Just one final point. With regard to the district court saying that the defendants didn't rebut the claim that Mr. Seals protested his innocence, that was a reversal of the burden of proof. That's something that plaintiff would bear the proof on. So, as I pointed out in our brief, I believe the district court was wrong, erred in saying that because that's a reversal of the burden of proof. They would bear the burden of proof on it. All right, well, thank you for your argument. If there aren't any other questions, I'd like to leave that to you. Well, your argument time has expired, unfortunately. The case is submitted, and there being no further cases for argument, the court may be adjourned. This honorable court now stands adjourned.